UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Martha I.O. Mogaji</u>

     v.                                                    Civil No. 20-cv-249-JL
                                                         Opinion No. 2022 DNH 126

<u>Tom Chan, Rosa Chan,</u>
<u>TRC Trust, Nan King Restaurant</u>

### FINDINGS OF FACT AND RULINGS OF LAW AFTER BENCH TRIAL

This commercial landlord-tenant case requires the court to determine whether the landlords violated any legal obligations they owed to the tenant before, during or after eviction proceedings conducted pursuant to New Hampshire law. The defendants[1] evicted the former tenant, plaintiff Martha I.O. Mogaji, from the subject premises in Hudson, New Hampshire after town officials determined that Ms. Mogaji had violated several town land use codes, thereby breaching a provision of the parties' lease. Claiming that her former landlords first failed to assist her in obtaining the necessary local permits, and later refused to allow her to retrieve her belongings from the premises, Ms. Mogaji, appearing pro se, sued the defendants for damages.[2] Ms. Mogaji asserts five causes of action: 1) breach of the lease; 2) interference with business relations; 3) negligence; 4) violation of Mass. Gen. Laws ("MGL") ch. 91-A; and 5) conversion.[3]

---

[1] The defendants are Tom Chan, his wife Rosa Chan, the TRC Trust and Nan King Restaurant. The precise nature of the ownership structure of the subject premises was not explored at trial. As Mr. and Mrs. Chan testified and were present throughout the trial, the court, for the sake of convenience (and not out of disrespect), will refer to the defendants collectively as "The Chans" or the "landlords."

[2] Ms. Mogaji originally filed this suit in the United Stated District Court for the District of Massachusetts. Judge Sorokin later transferred the case to this court pursuant to 28 U.S.C. § 1406(a). See Mogaji v. Chan, Civ. No. 19-12585-LTS (D. Mass. Feb 12, 2020) (transfer order).

The defendants have asserted a counterclaim for unpaid rent accrued during the pendency of the eviction proceedings.[4] This court's jurisdiction is premised on diversity of citizenship. 28 U.S.C. § 1332.

Prior to trial, the parties submitted separate timelines of events, pre-trial memoranda, and requests for findings of fact and ruling of law. The court held a one-day bench trial at which each side presented documentary evidence and witness testimony.[5] Relying on those materials and witness testimony, the court makes the following findings of fact and ruling of law, see Fed. R. Civ. P. 52(a)(1), resulting in judgment for the defendants, both on the plaintiff's claims and on their counterclaim.

I. **Findings of fact**

Plaintiff leased two units in a commercial building at 23 Burnham Road, Hudson, New Hampshire, commencing April 1, 2015, from defendant TRC Trust ("TRC"), the owner of the property. Defendant Rosa Chan (Chan) is a trustee of TRC. The rent for the two units totaled $1300 per month.

As relevant to this case, the five-year lease contained a provision requiring Ms. Mogaji to comply with all rules, regulations, ordinances, codes, and laws of all governmental authorities having jurisdiction over the premises. The lease also provided that the "landlord grants consent

---

[3]Am. Compl. (ECF No. 31) ¶¶ 32-45.

[4]Answer (ECF No. 33) ¶¶ 21-26.

[5]Although the court reminded Ms. Mogaji before trial of her absolute right to testify on her own behalf even while representing herself, she did not do so during her case-in-chief. She did testify, however, when called by the defendants during their case-in-chief.

to build-to-suit for multiple businesses and that parking spaces "directly in front" of the two units are for two leased units.[6]

On May 3, 2018, the Town of Hudson served Chan with a written notice that Ms. Mogaji's occupancy of the premises was in violation of town land use ordinances.[7] Specifically, the notice of violations indicated that signs had been erected without the required permits and that a restaurant had been created without building permits or site plan approval.[8]

The necessary permits required the landlord's signature. In attempting to get Mrs. Chan to sign the permit applications, Ms. Mogaji only presented Mrs. Chan with the signature pages, rather than the entire application. Mrs. Chan refused to sign the incomplete documents as presented to her.[9]

On May 4, 2018, the Town of Hudson Community Development Department posted a "Stop Work" order at the leased premises.[10] On May 11, 2018, plaintiff was served with a 30-day eviction notice alleging that she had failed to comply with a material term of the lease by, among other actions, creating a restaurant at the property without building permits and without plan approval by the Town of Hudson.[11]

---

[6] Pltf. Exh. 2.

[7] Def. Exh. D.

[8] Def. Exh. D. The Town had informed Ms. Mogaji nearly three years earlier that she was required to file a site plan with the Planning Board to operate a restaurant at the leased premises. Def. Exh. B.

[9] In making this finding, the court necessarily credits Mrs. Chan's testimony. In addition to her explicitly recalling Ms. Mogaji presenting only the signature pages of the required permits, Mrs. Chan testified that, as a long-time business owner, it was not her practice to sign signature pages detached from the entirety of the relevant documents.

[10] Def. Exh. E.

[11] Def. Exh. F.

On June 20, 2018, after Ms. Mogaji failed to vacate the premises, Mrs. Chan, as property manager, brought an eviction action in New Hampshire state court seeking possession of the premises.[12] Ms. Mogaji responded to the eviction action with an answer and counterclaim, in which she asserted several defenses to the eviction.[13] Among Ms. Mogaji's defenses were that the Chans had breached the lease by not assisting Ms. Mogaji in acquiring the necessary permits from the Town of Hudson and by vandalizing the property.[14] Ms. Mogaji also asserted a counterclaim for racial discrimination.[15]

TRC obtained a state court judgment against plaintiff on August 1, 2018.[16] In addition to awarding judgment "to the landlord," the court also found "for the [landlord] on [Ms. Mogaji's] counter claim. No vandalism was committed by the property owner."[17] Ms. Mogaji appealed the landlord-tenant judgment to the New Hampshire Supreme Court, which dismissed the appeal on November 14, 2018, because Ms. Mogaji did not pay rent after filing her notice of appeal, as court rules require.[18]

---

[12] Def. Exh. G.

[13] Def. Exh. H.

[14] Id.

[15] Id.

[16] Def. Exh. I.

[17] Id.

[18] Def. Exh. J.

After the appeal was dismissed, the state court issued a writ of possession to TRC on December 26, 2018.[19] The county sheriff delivered possession of the premises to TRC on January 9, 2019, at which time the locks to the leased premises were changed.[20]

On January 6, 2019, Ms. Mogaji sent an email to Mrs. Chan and her attorney, acknowledging that the defendant "now had a right to evict" her and requesting until the end of January to remove her belongings. In an exchange of texts on January 11, 2019, Mrs. Chan and Ms. Mogaji agreed that Ms. Mogaji was entitled to seven days to remove her belongings from the leased premises.[21]

Although Mrs. Chan, through counsel, rejected Ms. Mogaji's request that she be given until the end of January to remove her possessions, the parties agreed that Ms. Mogaji could remove her property from the premises beginning at 11 a.m. on January 15, 2019. Mrs. Chan told Ms. Mogaji that she would pay for four hours of police presence – a "civil standby" – and that Ms. Mogaji would have to pay the police department for additional time.[22] On January 15, Ms. Mogaji arrived at the premises later than the agreed-upon 11 a.m. start time.[23] At

---

[19] Def. Exh. K.

[20] Def. Exh. L.

[21] Def. Exh. M. The parties did not explain at trial the source of the seven days' notice "requirement." But since both Mrs. Mogaji and Ms. Chan agreed that Ms. Mogaji would have seven days to retrieve her belongings, the court does not explore the issue further. Although not raised by the parties, the court notes that N.H. Rev. Stat. Ann. § 540-A:3, VII requires a commercial landlord to "maintain and exercise reasonable care in the storage of the personal property of a tenant who has vacated the premises, either voluntarily or by eviction, for a period of 7 days after the date upon which such tenant has vacated." Beyond seven days, however, "such personal property may be disposed of by the landlord without notice to the tenant."

[22] Def. Exh. M; Pltf. Exh. 17(a).

[23] Def. Exh. M.

5

approximately 2 p.m., Mrs. Chan went to the local town offices to pay for another hour of the stand-by officer's time. At 3 pm., she locked the premises and she and the officer left the scene.

Meanwhile, at 2:53 pm., Ms. Mogaji notified Mrs. Chan that she was at the local courthouse. At 6:26 p.m. Ms. Mogaji notified Mrs. Chan that she had been granted an injunction to allow her more time to remove her property. At 8:45 p.m., Mrs. Chan asked for a copy of the court's order. At 10:18 p.m., Mrs. Mogaji replied that the sheriff would serve her. At 7:37 p.m. the next day, January 16, 2019, Mrs. Mogaji texted Mrs. Chan, saying that "neither [Mrs. Chan], the police nor the sheriff served me with any court documents before locking me out."[24]

Ms. Mogaji and Mrs. Chan had no further contact. On February 21, 2019, the court that issued the injunction on January 15 vacated its order, finding that it had no jurisdiction to issue such an order in a case involving a commercial tenancy. The New Hampshire Supreme Court affirmed that order in October 2019. Other than the aborted move on January 15, 2019, Ms. Mogaji made no attempt to remove her possessions from the leased premises after she received notice of the New Hampshire Supreme Court's November 14, 2018, dismissal of her eviction appeal.[25]

---

[24]Def. Exh. M. Presumably, Mrs. Mogaji was referring to the previous day's events, because the undisputed testimony is that Mrs. Mogaji was present on January 9, 2019, when the sheriff delivered the premises to the Chans and the locks were changed.

[25]Def. Exhs. N, O. The court is unpersuaded by Ms. Mogaji's testimony that she made no attempt to remove her possessions between November 14, 2018 and January 9, 2019 because she was waiting for the result of her appeal of the court's order vacating its own injunction. Such testimony is not credible, in light of the fact that the legal process stemming from the aborted January 15, 2019 move did not commence until <u>after</u> January 9. The legal landscape was clear as of November 14, 2018--the Chans' right to evict Ms. Mogaji was, by then, a legal certainty. Ms. Mogaji is solely responsible for her subsequent inaction.

## II. Rulings of Law

### A. Breach of contract

Ms. Mogaji alleges that the defendants breached the operative lease in two ways. First, in her complaint, she alleged that the Chans breached a contractual obligation to assist her in acquiring the permits from the Town of Hudson that she needed to legally operate her businesses. Second, during trial, Ms. Mogaji further alleged that the Chans breached a lease provision assigning certain parking spaces to Ms. Mogaji's business.

"Under New Hampshire law, a breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Teatotaller, LLC v. Facebook, Inc., 173 N.H. 442, 447, 242 A.3d 814, 818 (2020) (quoting Pro Done, Inc. v. Basham, 172 N.H. 138, 142, 210 A.3d 192, 196 (2019)). While proof of damages to the degree of mathematical certainty is not necessary, speculative losses are not recoverable. Hydraform Prod. Corp. v. Am. Steel & Aluminum Corp., 127 N.H. 187, 197 498 A.2d 339, 335 (1985) (citation omitted).

As to her first allegation of breach, the court, as previously noted, is persuaded by Ms. Chan's testimony that Ms. Mogaji did not provide her with the entire permit applications to sign, but only asked her to sign detached signature pages. Ms. Chan persuasively testified that as a long-time business owner, she was familiar with the appearance of the applications at issue and would not have signed a signature page detached from the relevant application.

As to Ms. Mogaji's second alleged breach, Mrs. Chan did not dispute that other tenants used parking spaces that were assigned to Ms. Mogaji. But that is not the end of the court's inquiry. As the court repeatedly cautioned Ms. Mogaji at trial, her failure to put on evidence that this alleged breach caused her damage could be fatal to this claim. One who seeks to recover damages has the burden of proving the extent and amount of such damages. Hangar One, Inc. v.

7

Davis Assoc's, Inc., 121 N.H. 586, 590, 431 A.2d 792, 795 (1981). On this point, Ms. Mogaji presented only the testimony of her brother, Cedric, who testified that he was responsible for paying Ms. Mogaji's $30,000 annual salary, and that she received all money to which she was entitled. Ms. Mogaji also asserted at trial that the defendants prevented her from earning even more money by damaging the businesses located at the premises with which she had a contractual relationship. But she offered no evidence as to the nature of those businesses, her relationship with them, or any compensation she had received or expected to receive in the future. Such bare speculation cannot support a claim for damages. Hydraform, 127 N.H. at 197, 498 A.2d at 345.

Accordingly, the court finds for the defendants on Count 1 of the amended complaint.[26]

### B. Interference with business relations

In Count 2, Ms. Mogaji alleges that the defendants damaged businesses she was attempting to operate in the leased premises by refusing to prevent other tenants from harassing her with racial epithets and throwing trash in front of her leased spaces. She claims that the Chans' refusal to intervene constituted tortious interference with business relations.

To succeed on her claim of tortious interference with business relations under New Hampshire common law, Ms. Mogaji must prove: (1) she had a contract with a third party; (2) the defendants were aware of that contract; (3) the defendants wrongfully induced the third party to breach the contract; and (4) Ms. Mogaji's asserted damages were proximately caused by the defendant's wrongful conduct. R & J Tool, Inc. v. The Manchester Tool Co., No. CIV. 99-242-

---

[26]Because it finds for the defendants on the merits of Count 1, the court need not rule on the defendants' argument that the termination of the state court eviction proceeding in their favor precludes Ms. Mogaji's breach of contract claim under the doctrine of res judicata. See Order on Motions in Limine, (Doc. No. 94), at 3-4 n.1.

M, 2001 WL 274820, at *5 (D.N.H. Jan. 10, 2001) (citing Roberts v. General Motors Corp., 138 N.H. 532, 539, 643 A.2d 956, 960-61 (1994) and Barrows v. Boles, 141 N.H. 382, 392–93, 687 A.2d 979, 988 (1996)).

Ms. Mogaji testified that she was performing services as a contractor for the businesses at the leased premises and would have earned money from their success.  That testimony, however, was devoid of specifics.  Other than the restaurant, the construction of which was halted by Town officials due to the lack of required permits, none of the businesses nor their respective purposes were described at trial.  Nor did Ms. Mogaji present any evidence regarding the performance of those businesses or evidence of her own financial losses stemming from the failure of the businesses.  Thus, even crediting Ms. Mogaji's testimony that she had contracts with the businesses at the leased premises, that the Chans knew of those contracts, and that they failed to resolve the trash and harassment issues, Ms. Mogaji has failed to prove that these businesses breached their obligations to her or that she was damaged by the Chans' conduct. Accordingly, the court finds for the defendants on Count 2 of the amended complaint.

      **C.**    **<u>Negligence</u>**

In Count 3, Ms. Mogaji alleges that the defendants were negligent in failing to give her a reasonable time to remove her possessions from the leased premises.  In order to succeed on this claim, Ms. Mogaji would have to prove that the defendants owed her a duty, breached that duty, and that the breach proximately caused her injury.  Bloom v. Casella Constr., Inc., 172 N.H. 625, 627, 232 A.3d 357, 359 (2019).

The undisputed evidence in this case is that Ms. Mogaji could have removed her possessions from the leased premises at any time after the New Hampshire Supreme Court affirmed her eviction from the premises in November 2018 until the sheriff delivered the

premises back to the landlord (by changing the locks) on January 9, 2019. Thus, regardless of what transpired on January 15, 2019, the Chans did not breach any duty they might have owed Ms. Mogaji regarding access to her possessions. Accordingly, the court finds for the defendants on Count 3 of the amended complaint.[27]

### D. Mass. Gen. L. ch. 93

In Count 4 of her amended complaint, Ms. Mogaji alleges that the defendants violated Mass. Gen. L. ch. 93A, the Massachusetts consumer protection statute. On its face, this claim fails because this case has no connection to Massachusetts. See Mass. Gen. L. ch. 93-A:11 (requiring that allegedly unfair trade practice occur in Massachusetts). The claim also fails under the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-a, as Ms. Mogaji presented no evidence or argument that the defendants engaged in any "unfair or deceptive act or practice" as is required by that statute. See N.H. Rev. Stat. An. § 358-A:2 (listing unlawful acts).[28] Accordingly, the court finds in favor of the defendants on Count 4 of the amended complaint.

---

[27] Ms. Mogaji's reliance on the state court's January 15, 2019 order granting her seven additional days to remove her possessions is misplaced for two reasons. First, the evidence at trial demonstrated that Mrs. Chan was prepared to allow Ms. Mogaji additional time, but that Ms. Mogaji did not avail herself of the opportunity. See Def. Exh. M; pltf. Exh. 17(b). Second, the issuing court vacated its own order on February 12, 2019, after concluding it did not have jurisdiction to grant relief in a commercial lease dispute. As such, the original order was invalid from its inception. See Cooperman v. MacNeil, 123 N.H. 696, 700, 465 A.2d 879, 881 (1983) ("any action taken by a court without jurisdiction is void and may be challenged at any stage of the proceedings."); see also In re Sculley, 153 N.H. 178, 180-81, 890 A.2d 914, 915-16 (N.H. 2006) (vacating lower court's order enforcing child support decree issued without jurisdiction); Hussey v. Town of Barrington, 135 N.H. 227, 232, 604 A.2d 82, 85 (1982) (variance issued without jurisdiction was "invalid and of no effect; it conferred no rights upon [the party receiving it], as it was void from the very date on which it was issued.").

[28] Ms. Mogaji also failed to introduce any evidence or make any argument that the defendants violated the "rascality test" applied to acts not specifically delineated in the statute. See Fat Bullies Farm, LLC v. Devenport, 170 N.H. 17, 24, 164 A.3d 990, 995-96 (2017) ("Under

### E.  Conversion

In Count 5, Ms. Mogaji claims the defendants committed conversion when they failed to return her property following the eviction.  "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  Muzzy v. Rockingham County Tr. Co., 113 N.H. 520, 523, 309 A.2d 893, 894 (1973).

As previously explained, the defendants did not "interfere" with Ms. Mogaji's right to her property.  She had several opportunities to remove her property from the leased premises – both before and after possession of the premises was returned to the defendants.  More fundamentally, however, Ms. Mogaji did not introduce any evidence as to the nature or value of the alleged property she claims the defendants converted.  Therefore, the court finds for the defendants on Count 5 of the amended complaint.

### F.  Defendants' Counterclaim

In their counterclaim, the defendants seek to recover unpaid rent from August 1, 2018 (the date of the state court's eviction judgment) through December 31, 2018.  Under New Hampshire law, "the general rule is that the proper measure of recovery 'against a tenant for the failure to surrender the premises is the reasonable rental value for the time possession is withheld.'"  Greelish v. Wood, 154 N.H. 521, 523, 914 A.2d 1211, 1214 (2006) (quoting 49 Am.Jur.2d Landlord and Tenant § 278 (2006)).  The court initially considered "starting the holdover clock" on November 14, 2018, when the Supreme Court dismissed the appeal.  As that dismissal was itself premised on Ms. Mogaji's failure to pay rent during the pendency of the

---

the rascality test, the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.")

appeal, as court rules require,[29] the court finds for the defendants on their counterclaim and awards them the relief requested, $5200 for the period of September 2018–- December 2018.[30]

### III. Conclusion

For the reasons stated above, the court finds for the defendant on Counts 1-5 of plaintiff's amended complaint. The court finds for the defendants on their counterclaim, and awards damages in the amount of $5,200. The Clerk shall enter judgment accordingly.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: October 7, 2022

cc: Martha Mogaji, pro se
     Arthur O. Gormley, III, Esq.

---

[29] Def. Exh. J; N.H. Dist. Div. R. 5.11(B).

[30] Def. Revised Req. for Findings (Doc. No. 91) ¶ 61.